**FIN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DAVID JAMES WITT (#R64144), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 24-cv-11942 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| ROB MCELLIN, RENEE BROCKMAN, and | ) | |
| CHELSEA BIANCI[1], | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' 12(b)(6) MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

NOW COMES Defendants Rob McEllin, Renee Brockman, and Chelsea Bianchi[2] (together, the "Defendants"), by and through their attorney, Robert B. Berlin, DuPage County State's Attorney, and his Assistants, Mark Winistorfer and Krystina Jonsson, and for their opposed Motion to Dismiss Plaintiff's Complaint, state the following:

**INTRODUCTION**

Plaintiff's Complaint must be dismissed because it fails to adequately plead a claim of deliberate indifference to a serious medical need under Section 1983. Plaintiff claims that he sustained injuries from wearing a SCRAM device on his leg from July 2022 to March 2024. Plaintiff's Complaint, however, fails to set forth sufficient allegations that the Defendants were aware of his serious medical need, nor that they acted objectively unreasonable under the circumstances. In fact, the only direct allegations against Defendants McEllin and Brockman are that they refused to inform Judge Ann Celine Walsh about Plaintiff's purported injuries. The only allegation against Defendant Bianchi is that she told Plaintiff that she hoped "they find one to fit you." These allegations are woefully insufficient

---

[1] In its May 30, 2025 Order (the "Screening Order"), the Court dismissed all claims against Defendants Bob Berlin, Judge Ann Celine Walsh, and Rick Kayne. (Dkt. 17.)

[2] Defendant Chelsea Bianchi's surname is misspelled throughout the Complaint as "Bianci."

to support a Section 1983 claim for individual liability against the Defendants. Even applying the most liberal of pleading standards, it is doubtful that Plaintiff will be able to support the legal adequacy of his Complaint. Consequently, Plaintiff's Complaint should be dismissed.

## RELEVANT BACKGROUND

The following facts are taken from the Complaint and are presumed to be true solely for the purposes of this Motion to Dismiss.

Plaintiff's Complaint seemingly alleges violation of 42 U.S.C. Section 1983 of the Civil Rights Acts ("Section 1983"), wherein he claims that he suffered injuries as a result of having to wear the SCRAM device. (Dkt. 19.) Witt alleges that he was administered the SCRAM device on July 27, 2022. (*Id.* at p. 6.) Witt claims that a few months after the SCRAM device was fitted to his left leg, he started having severe pain and breaking skin. (*Id.* at p. 9.[3]) Yet, Witt admits he did not seek medical intervention until a year and a half later, in December of 2023, at which time he was admitted to the hospital for cellulitis. (*Id.*) Witt alleges that he went to the ER following the advice of a SCRAM director, but that the Probation Department denied removal of the device, however, Witt then clarifies that while the SCRAM device was reinstalled, it was placed on his right leg, not the left leg that had been treated for cellulitis. (*Id.* at pp. 6, 9.) Witt does not allege that any of the three Defendants specifically denied removal of the SCRAM device at any point.

Witt then alleges that a few weeks later, he experienced similar pain and skin breakage on his right leg. (*Id.* at p. 9.) Witt claims he went back to the ER and urgent care 3 times and had developed cellulitis in his right leg. (*Id.*) Witt does not allege that any of the Defendants were aware of the injuries to his right leg. Witt then states that the SCRAM device was removed from his right leg and placed

---

[3] Witt appends two letters to his Complaint which are "part of the pleading for all purposes." Fed. R. Civ. P. 10(c); *Fisher Iron & Steel Co. v. Elgin, J. & E. Ry. Co.*, 101 F.2d 373, 373 (7th Cir. 1939). Further, "[t]o the extent that an exhibit attached to or referenced by the complaint contradicts the complaint's allegations, the exhibit takes precedence." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013).

2

back on his left leg "which had barely healed from [his] previous wounds," where it remained until March 25, 2024. (*Id.*) Witt admits that he was offered an alternative alcohol monitoring device – a portable phone TRAC – but that he declined this option "because of his occupation as a banquet hall chef." (*Id.*)

Witt acknowledges that his own attorney did not advocate for a different form of punishment because the attorney "had seen way worse." (*Id.* at 6.) Witt also acknowledges that Judge Walsh only stated that she was aware of his injuries after she was allegedly shown pictures of Witt's injuries. (*Id.*) As to the Defendants McEllin and Brockman, Witt merely alleges that they "refused to inform Judge Walsh because it wasn't a 'violation.'" (*Id.* at p. 6.) As to Defendant Bianchi, Witt only alleges that she "simply responded with 'I hope they find one to fit you.'" (*Id.*) Plaintiff does not provide **any** information which would indicate what these statements were in response to or when these statements were made. In fact, Witt fails to allege altogether that any of the Defendants were aware of the severity of his purported injuries, nor that they discouraged treatment of the same. In fact, there are no further allegations directed at the Defendants.

## **STANDARD OF REVIEW**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) rests on whether the plaintiff has properly stated a claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff's pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. The pleading is not required to set forth detailed factual allegations, but it does require something more than basic, conclusory allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In particular, the pleading must contain allegations that "state a claim to relief that is plausible on its face." *Id.* (citing *Twombly*, 550 U.S. at 570). A claim is facially plausible when "the pleaded content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). At the Motion to

3

Dismiss stage, "even a complaint that passes muster under the liberal notice pleading requirements of Federal Rule of Civil Procedure 8(a)(2) **can be subject to dismissal if a plaintiff does not provide argument in support of the legal adequacy of the complaint**." *Lee v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 912 F.3d 1049, 1053–54 (7th Cir. 2019) (emphasis added).

The pleading standard in Rule 8 does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Twombly,* 550 U.S. at 555. A "plaintiff's obligation to provide the 'grounds' of his 'entitlement for relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* "[A] complaint will not suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 677 (2008) (quoting *Twombly,* 550 U.S. at 557). The complaint also must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face," which means that the pleaded facts must show there is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. If the factual detail in a complaint is "so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8," it is subject to dismissal. *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007).

A court is not "required to ignore any facts set forth in the complaint that undermine the plaintiff's claim or to assign any weight to unsupported conclusions of law." *City Nat'l Bank of Florida v. Checkers, Simon & Rosner*, 32 F.3d 277, 281 (7th Cir. 1994) (citations omitted).

## ARGUMENT

### I.      PLAINTIFF FAILS TO STATE A CLAIM UNDER § 1983.

Plaintiff's Complaint should be dismissed because the factual detail of the Complaint is "so sketchy" that it fails to provide Defendants with the notice they are entitled under Rule 8. *Airborne Beepers*, 499 F.3d at 667. On its face, Plaintiff's Complaint fails to plausibly state a claim under Section

1983. Although the Court construes *pro se* pleadings liberally and draws all reasonable inferences in Plaintiff's favor, the inferences must be reasonable and dismissal is proper if it appears beyond doubt that the Plaintiff cannot prove any facts that would support his claim for relief. *See Nicholson v. Synch Sols.*, No. 09 CV 1263, 2012 WL 1992298, at *2 (N.D. Ill. May 31, 2012) (J. Norgle).

There is no doubt that Plaintiff's Complaint is exceedingly vague, however, he does indicate that he was administered a SCRAM device on July 22, 2022 "until [his] surrender date 3/25/24." (Dkt. 19, p. 4.) Presumably, the SCRAM device was a condition of Plaintiff's pretrial release. Conditions of pretrial detention are reviewed under the Fourteenth Amendment's objective reasonableness standard. *Hardeman v. Curran*, 933 F.3d 816, 823 (7th Cir. 2019) (*citing Kingsley v. Hendrickson*, 576 U.S. 389 (2015)). This is a safe presumption, based on Plaintiff's guilty plea on January 30, 2024, as well as his removal from the SCRAM program (and placement on TRAC) on that date until the time he was to surrender to custody. *See* **Exhibit A**. However, Plaintiff was then placed *back* on the SCRAM device on February 9, 2024, presumably at his own request, based on his allegation that the TRAC device interfered with his work. *See* **Exhibit B**. Plaintiff surrendered to custody on March 25, 2024. *See* **Exhibit C**.[4]

While not clearly articulated, Plaintiff appears to attempt to assert a Section 1983 claim for indifference to a serious medical need or excessive force. However, the Court has opted to decide whether Plaintiff has stated a claim by eschewing specific labels, quoting *Kingsley* by saying "whether a defendant's conduct is objectively unreasonable turns on the facts and circumstances of each particular case" and looking to Defendants' alleged conduct as a whole. (Dkt. 17, p. 3.) The Court, in quoting

---

[4] This Court may take judicial notice of an adjudicative fact that is both "not subject to reasonable dispute" and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Generally, court records are appropriate subjects for judicial notice because they are sources "whose accuracy cannot reasonably be questioned." *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997). Courts have the power to take judicial notice of proceedings in other courts, both within and outside of the federal judicial system, if the proceedings have a direct relation to matters at issue even if those proceedings were not made part of the record. *See United States v. Hope*, 906 F.2d 254, 260 n.1 (7th Cir. 1990); *see also Henson v. CSC Credit Svcs.*, 29 F.3d 280, 284 (7th Cir. 1994). Therefore, this Court would be within its power to, and should, take judicial notice of documents filed in the underlying criminal proceeding in the Eighteenth Judicial Circuit Court, DuPage County, Illinois.

*Bell* v. *Wolfish*, has lumped all "objectively unreasonable" conduct together, whether it amounts to a recognized claim under the law or not, as violative of the Fourteenth Amendment if the pretrial restriction in question is not reasonably related to a legitimate, non-punitive, governmental objective. *See id.*; *Bell v. Wolfish*, 441 U.S. 520, 539 (1979).

*Bell*, and the Court, still require that, to be held liable under Section 1983, a Defendant must have actually caused or participated in the alleged constitutional violation. *McBride v. Soos*, 679 F.2d 1223, 1227 (7th Cir. 1982); *Bell* 441 U.S. 539. A Defendant must be personally responsible for the deprivation of which the plaintiff complains. *Johnson v. Snyder*, 444 F.3d 579, 583 (7th Cir.2006); *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir.1996); *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir.1995).

Here, the allegations are so sparse that no reasonable inference can be drawn that the Defendants are liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Instead, all the Complaint offers, at best, is "a sheer possibility that [Defendants] acted unlawfully." *Ashcroft,* 556 U.S. at 678. This is plainly insufficient even under the most liberal pleading standards. *Id.* To be liable for excessive force, the law requires that the Defendant to have participated in the wrongful conduct. *Thompson v. Cook Cnty.*, No. 22 C 1938, 2023 WL 2838449, at *4 (N.D. Ill. Apr. 7, 2023) (J. Durkin). Plaintiff fails to specify whether *any* of the named defendants ever touched him, that they participated in the fitment of his SCRAM device, or that the SCRAM device was applied too tightly. Therefore, Plaintiff's claim does not fit within this framework.

The controlling inquiry for assessing a due process challenge to a pretrial detainee's medical care proceeds in two steps. *McCann v. Ogle Cnty., Illinois*, 909 F.3d 881, 886 (7th Cir. 2018). The first step, which focuses on the intentionality of the individual defendant's conduct, "asks whether the . . . defendants acted purposefully, knowingly, or perhaps even recklessly when they considered the consequences of their handling of [plaintiff's] case." *Id.* at 886. A showing of negligence or even gross negligence will not suffice. *Id.* At the second step, the Court asks whether the challenged conduct was

objectively reasonable. *Id.* "Objective reasonableness" considers "the totality of facts and circumstances faced by the individual alleged to have provided inadequate medical care and to gauge objectively—without regard to any subjective belief held by the individual—whether the response was reasonable." *Taylor v. Dart*, 2022 WL 4483908, 7* (N.D. Ill.) (J. Blakey), *quoting McCann*, 909 F.3d at 886. This step also considers whether the complained-of medical condition qualifies as "an objectively serious medical condition." *Williams v. Ortiz*, 937 F.3d 936, 942 (7th Cir. 2019). "A serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).

Plaintiff was not in custody at any point during the relevant time period and was free to seek medical attention on his own, rather than allegedly relying on the Defendants to provide it or authorize it. Further, Plaintiff was fully capable of disclosing his condition to Judge Walsh, as he even alleges he did, and seeking to amend the conditions of his pretrial release. Plaintiff instead allowed his medical condition to deteriorate to the point where he was allegedly damaged and even chose SCRAM over options that may not have contributed to his apparently ongoing medical issues. Turning to the Court's determination regarding the condition of Plaintiff's pretrial release, Plaintiff still fails to state a claim. First, to be clear, the SCRAM bracelet was a court-ordered condition of his pretrial release. *See* July 25, 2022 Order for Defendant to Abstain from Alcohol and for SCRAM Monitoring and July 25, 2022 Additional Conditions of Bond, attached hereto as **Group Exhibit D**.[5] This was not "punishment" at all but a reasonable precaution available to the Court to cease Mr. Witt's consumption of alcohol and unlawful driving habits. The alternative to this condition of pretrial release is 1) a TRAC device (which Plaintiff refused), or 2) custody.

---

[5] This Court may take judicial notice of the attached exhibit. *See General Elec. Capital Corp.*,128 F.3d at 1081; *see also Hope*, 906 F.2d at 260; *see also Henson* , 29 F.3d at 284.

Indeed, there are serious issues with the timeline described in the Complaint. Plaintiff alleges that he was administered the SCRAM device on July 27, 2022. (Dkt. 19, p. 6.) In the letter attached to the Complaint, Plaintiff states that "a few months after the bracelet was put on my leg, I started having severe pain and breaking skin. . ." (*Id.* at p. 9.) Yet, Plaintiff admits he did not seek treatment until December of 2023, at which point he claims to have been admitted for cellulitis. (*Id.*) He admits that once released from the hospital, the SCRAM bracelet was placed on his other leg, not the leg with the injury. (*Id.*) At no point does Plaintiff allege when he informed any of the Defendants of an issue with the SCRAM bracelet, thus there is no indication of whether the Defendants were ever aware of the severity of Defendant's alleged injuries until the device was switched to the other leg.

Plaintiff alleges that Defendants McEllin and Brockman "refused to inform Judge Walsh because it wasn't a 'violation.'" (Dkt. 19.) Plaintiff does not specify: (i) *what* McEllin and Brockman refused to inform the Judge about; nor (ii) *when* this interaction occurred. *See id.* Even construing that Plaintiff meant that McEllin and Brockman failed to alert the judge to Plaintiff's medical condition, there are no facts to indicate that the Judge failed to learn this fact or that the Judge's failure to learn it delayed any treatment to Plaintiff. Furthermore, there is nothing to indicate that McEllin and Brockman acted objectively unreasonably. Indeed, if it is assumed that Plaintiff did show his injuries to McEllin and Brockman, it is more plausible that these injuries did not appear serious in nature based on Plaintiff's other allegations that: (i) his own attorney did not advocate for a different form of "punishment" because "he had seen way worse;" and (ii) Judge Walsh is not alleged to have ordered a different "punishment" despite being shown photos of Plaintiff's injuries, and his apparent desire to remain on SCRAM. (Dkt. 19, p. 4., EX C.)

Certainly, as described above, there are no allegations that McEllin or Brockman actually attached the SCRAM device, discouraged Plaintiff from seeking medical intervention or that they refused to heed to any medical advice regarding removal or adjustment of the device. Plaintiff only

alleges that the *Probation Department* denied removal of the device, but this is insufficient to support a Section 1983 claim, where "[d]efendant must be personally responsible for the deprivation of which the plaintiff complains." *Johnson*, 444 F.3d at 583; *Vance*, 97 F.3d at 991; *Gentry*, 65 F.3d at 561. As such, Defendant McEllin cannot be made responsible in *respondeat superior* for the actions of his subordinates, if, indeed, someone from the Probation Department did so. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 663 n. 7 (1978) ("[T]he doctrine of *respondeat superior* is not a basis for rendering municipalities liable under § 1983 for the constitutional torts of their employees.") Plaintiff must allege some wrongful act on the part of McEllin, which he does not.

Moreover, the Complaint confirms that on both occasions where Plaintiff was diagnosed with cellulitis, the SCRAM device was removed and placed on his other leg. (Dkt. 19.) Again, there are no allegations that this action was taken in contravention to medical advice, or even Plaintiff's wishes, plus Plaintiff fails to allege *who* authorized this action. Further, Plaintiff admits he was offered a TRAC device (a breathalyzer that can be connected to a cellular phone) which *he* declined. (Dkt. 19.) At best, Plaintiff's allegations may be construed to plead that McEllin and Brockman were negligent, which is not enough to support a constitutional right to relief. *McCann*, 909 F.3d at 886. Consequently, the claims against Defendants McEllin and Brockman must be dismissed.

Even more tenuous are Plaintiff's allegations as to Defendant Bianchi. Plaintiff only alleges that Defendant Bianchi "simply responded with 'I hope they find one to fit you.'" (Dkt. 19, p. 6.) Again, he provides no allegations indicating *when* this statement was purportedly made, nor in what context. Even drawing the most liberal and generous of inferences in Plaintiff's favor, there is absolutely no indication whatsoever that Bianchi had any knowledge of Plaintiff's alleged injury and its extent, much less that she could have perceived the need for a doctor's attention. There is not even a plausible allegation that Ms. Bianchi ignored Plaintiff's complaints about the SCRAM device. If anything, the singular allegation plausibly indicates that Ms. Bianchi was under the impression that

9

Plaintiff was being re-fitted for the SCRAM device. Even if unsubstantiated inferences are drawn from these allegations, at best, Plaintiff's allegations against Bianchi might be construed as negligence, but these allegations do not even come close to pleading that Defendant Bianchi acted in an objectively unreasonable manner. Accordingly, any claims against Defendant Bianchi must be dismissed.

In the Screening Order, the Court cites to two cases that were permitted to proceed under the Fourteenth Amendment where the Plaintiff alleged physical injuries from tight ankle monitors. (Dkt. 17.) Those cases also evaluated whether the defendant's conduct was objectively unreasonable. *See Thompson v. Cook Cnty.*, No. 22 C 1938, 2023 WL 2838449, at *3 (N.D. Ill. Apr. 7, 2023); *Wilson v. Zielke*, No. CIV.A. 06-2450, 2009 WL 1285867, at *4 (E.D. Pa. Apr. 23, 2009). These cases, however, are readily distinguishable from the instant case.

In *Thompson*, the plaintiff, who suffered from a history of diabetes, leg swelling, and peripheral arterial disease ("PAD"), was allowed to proceed on an excessive force claim after he was arrested and placed on electronic monitoring via an ankle band and monitor. 2023 WL 2838449, at *1. The device was placed on plaintiff's right leg, and despite repeated complaints that the device was too tight combined with ongoing health issues, including a surgery to the right leg, the device was kept on the plaintiff's right leg even following surgery. *Id.* at 1-2. Eventually, his right leg required amputation. *Id.* Importantly, plaintiff's Complaint contained allegations that: (i) plaintiff informed defendants that his ankle band was still too tight following an adjustment of the device; (ii) defendants knew about plaintiff's history of leg swelling, poor circulation in his lower extremities, various procedures plaintiff underwent including arterial bypass surgery to address leg circulation issues; (iii) complaints of pain in the leg on which the device was placed; (iv) defendants knew of the potential risks of placing the device on the compromised leg and defendants knew that ankle bands are contraindicated for people with severe PAD, circulation issues, and histories of swelling and diabetes; and (v) defendants placed, reapplied, and allowed the device to remain on his compromised leg in an extremely tight fashion,

refused to loosen it or consider alternative placement until a few weeks before his leg amputation. *Id.* at \*2-3. The *Thompson* court stated that, taken together, these allegations permit the reasonable inference that the defendants' conduct was objectively unreasonable. *Id.* at \*3.

Here, Plaintiff's Complaint fails to include any significant allegations that would permit a reasonable inference that the Defendants acted objectively unreasonably. Notably, Plaintiff does not allege that the SCRAM bracelet was placed too tightly, that the named Defendants were involved in the fitment of his SCRAM monitor, or that he informed any of the named Defendants of the severity of his pain or discomfort and they failed to act. He also does not allege that he had a known pre-existing condition that would contraindicate the use of the SCRAM device of which Defendants were also aware, or that Defendants kept the SCRAM device on the affected leg after being made aware of Plaintiff's issues. (Dkt. 19.) In fact, the letter attached to the Complaint confirms that once Plaintiff sought medical treatment for his alleged injuries, the SCRAM device was removed and placed on his other leg. (Dkt. 19.) It is clear that in *Thompson*, the plaintiff pled far more substantial allegations which evaded dismissal of his claims. That is not the case here, and Plaintiff's barebones Complaint must be dismissed.

In *Wilson*, the court was considering the case on a motion for summary judgment, so the applicable standards differ from the case at bar. 2009 WL 1285867 at \*1. Nonetheless, a review of the Amended Complaint in the *Wilson* matter reveals that the plaintiff in that case alleged: (i) plaintiff repeatedly complained to defendants that the electronic monitoring device placed on his right leg was **too tight** and causing him pain, numbing, and swelling; (ii) plaintiff showed defendants the condition of his leg and repeatedly requested removal or modification of the device; and (iii) defendants repeatedly responded to plaintiff's requests by telling him that if he did not stop complaining they would put him in jail. *See* Amended Complaint, *Wilson v. Zielke*, Case No. 2:06-cv-02450, at Dkt. 12, attached hereto as **Exhibit E**. Once again, there is no allegation here that the SCRAM device was too

11

tight, nor that Plaintiff communicated anything of the sort to Defendants. Further, the Complaint here fails to plead that Plaintiff actually complained to Defendants and/or showed them his alleged injuries, and the Defendants individually refused to allow him medical treatment. Plaintiff should not be permitted to proceed on his flimsy allegations, which do not amount to a reasonable inference of objective unreasonableness on the part of the named Defendants.

The Complaint simply does not allege enough facts to draw *any* conclusion regarding Defendants' liability. Even under the most liberal of pleading standards, Plaintiff's claims do not meet the standards required to assert a Section 1983 claim, and, therefore, the Complaint must be dismissed.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Defendants, request that this honorable Court dismiss Plaintiff's Amended Complaint with prejudice, and for any and all further relief deemed to be just and appropriate.

Dated: September 15, 2025

Respectfully submitted,
ROBERT B. BERLIN
DuPage County State's Attorney

By:*/s/ Krystina Jonsson*

*One of the Defendants' Attorneys*

By: Mark Winistorfer, Assistant State's Attorney
ARDC 6310510
Mark.Winistorfer@dupagecounty.gov
Krystina Jonsson, Assistant State's Attorney
ARDC 6329884
Krystina.jonsson@dupagecounty.gov
503 N. County Farm Road
Wheaton, Illinois 60187
630/407-8200