**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| David James Witt,<br><br>Plaintiff,<br><br>v.<br><br>Rob McEllin; Renee Brockman; and Chelsea Bianchi,<br><br>Defendants. | ) | 1:24-cv-11942<br><br>Jury Trial Demanded |

## AMENDED COMPLAINT

Plaintiff, David James Witt, by and through his attorneys, Loevy & Loevy, complains of Defendants Rob McEllin, Renee Brockman, and Chelsea Bianchi (sometimes, collectively, the "Defendants"), and alleges as follows:

## INTRODUCTION

This is an action brought by Plaintiff David James Witt. Briefly stated, Mr. Witt had a bracelet affixed to his ankle as a condition of his pre-trial release. Over the ensuing months, Mr. Witt experienced worsening pain, culminating in multiple trips to the emergency room. Defendants, who are all employed by the DuPage County Probation Department, ignored

Plaintiff's apparent medical needs, despite Mr. Witt's repeated complaints. After months of constant pain and suffering, Mr. Witt experienced scarring and injuries to both of his legs:




Mr. Witt brings suit to redress the deprivation of his Constitutional rights.

**JURISDICTION AND VENUE**

1. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

2. This Court has jurisdiction of the action pursuant to 28 U.S.C. §§ 1331.

3. Venue is proper under 28 U.S.C. § 1391(b). The events giving rise to the claims asserted in this complaint occurred in this judicial district and the parties reside in this district.

**PARTIES**

4. Plaintiff David James Witt is a lifelong resident of Addison, Illinois. Plaintiff is 51 years old and is a chef. He has been cooking for nearly 25 years, starting off as a line cook and rising to head banquet hall chef. Now, he works as head chef at a catering business in Glen Ellyn, Illinois.

5. At all times relevant to the events described in this Complaint, Defendant Rob McEllin was the head of the DuPage County Probation and Court Services ("Probation Department"). He is sued in his individual capacity.

6. At all times relevant to the events described in this Complaint, Defendant Renee Brockman was a Senior Probation Officer at the Probation Department. Brockman administered the Secure Continuous Remote Alcohol Monitor ("SCRAM") program and oversaw the adjustments of Plaintiff's SCRAM bracelet. She is sued in her individual capacity.

7. At all times relevant to the events described in this Complaint, Defendant Chelsea Bianchi was a probation officer at the Probation Department. She served as Plaintiff's probation officer. She is sued in her individual capacity.

8. All defendants were acting under color of state law.

## FACTUAL ALLEGATIONS

### Pre-Trial Probation

9. On or about July 25, 2022, Plaintiff was charged with a non-violent DUI. As a condition of Plaintiff's bond, the court ordered Plaintiff to wear a SCRAM bracelet.

10. The court order dated July 25, 2022, stated that "Defendant shall immediately notify Probation personnel of any complications with the SCRAM device including, but not limited to, if it becomes loose or tight while being worn, any health issues experienced from wearing it, emergencies requiring removal of the device, or any suspected malfunction or condition which may interfere with the operation of the device."

11. On or about July 27, 2022, an unknown female employee of the Probation Department placed a SCRAM bracelet on Plaintiff's lower left leg. The employee ensured that the SCRAM bracelet was tight enough on Plaintiff's leg by sticking her two fingers between the

bracelet and his leg. The monitor on the SCRAM bracelet was required to maintain contact with his skin.

12. The Health and Safety Notice for SCRAM Systems Products states: "Some side effects may occur when beginning to wear a bracelet… If you experience any of the following conditions, you should immediately contact your supervising authority for further instructions and seek medical help if needed: Sores; Open wounds; Bruising; Severe irritation or redness."

13. As part of his pretrial probation, Plaintiff was required to check in with his probation officer, Defendant Bianchi, over the phone every week. He would also check in in-person nearly monthly at the Probation Department to charge his bracelet.

14. Within two months of putting the bracelet on, Plaintiff started to experience severe pain and irritation from the SCRAM bracelet on his lower left leg.

15. Plaintiff did not have any pre-existing skin conditions prior to wearing the SCRAM bracelet.

16. After experiencing severe pain and irritation on his leg, Plaintiff informed Defendant Bianchi over the phone about his injuries. She told him she could not do anything for his leg, and that there was no other option except to keep the bracelet on.

17. Plaintiff's injuries began to worsen in March 2023, with a visible indent in his skin from the SCRAM bracelet, as depicted in color copies of the following photo:



18. The condition of Plaintiff's left leg continued to deteriorate. His skin reddened and hardened. Then, the wound opened, and started smelling, crusting, and discharging matter. Plaintiff described the pain as constantly electrocuting him.

19. During one of his check-ins the Probation Department to charge the bracelet, Plaintiff showed Defendant Brockman his injuries. Plaintiff requested that she relocate, modify, or remove the device. But Defendant Brockman had no reaction to his injuries

20. Defendant Brockman attempted to adjust the SCRAM bracelet, but her actions did nothing to improve Plaintiff's pain. Afterwards, Plaintiff told her that he was still in pain from the bracelet.

21. Because Defendant Brockman did not do anything to improve his condition, Plaintiff asked for her supervisor, Defendant Rob McEllin.

22. Defendant McEllin was present for the adjustment of Plaintiff's SCRAM bracelet. Defendant McEllin saw and was made fully aware of Plaintiff's injuries. Defendant McEllin also refused to modify, relocate, or remove the SCRAM bracelet, telling Plaintiff that he needed to keep the SCRAM bracelet on.

23. At various times during his check-ins, Plaintiff repeatedly asked Defendants Bianchi, Brockman, and McEllin to modify, relocate, or remove the SCRAM bracelet to help ameliorate his pain. However, Defendants failed to properly adjust his bracelet, and after each adjustment Plaintiff told Defendants that he was still experiencing pain. Yet Defendants kept the bracelet on his left leg.

24. Plaintiff asked Defendants Bianchi, Brockman and McEllin for the following alternatives, which they denied: adjust the bracelet so that it did not cause him pain; move the SCRAM bracelet to another ankle; replace the SCRAM bracelet with an alcohol monitor watch; spend the weekends in jail.

25. On information and belief, Defendants Brockman and McEllin each had the power to adjust the bracelet, relocate the bracelet, or remove the bracelet entirely before Plaintiff's injuries were so bad that he needed to go to the emergency room ("E.R.").

26. Instead, Defendants Brockman and McEllin left Plaintiff in a state of chronic pain.

27. On or about Saturday, December 30, 2023, while at work, Plaintiff's condition deteriorated. His ankle was bleeding during service. Unable to tolerate his pain any longer, he left his job as a head banquet hall chef early.

28. On or about December 30, 2023, Plaintiff visited the E.R. at Elmhurst Hospital. Plaintiff presented with yellow and green pus from the site of the SCRAM bracelet on his left leg. His skin was red and broken at the site of the bracelet, presenting an indurated and indented

wound. He was diagnosed with cellulitis. Later, this injury was described as a large ulcerative wound:



29. The doctors attributed the wound to the SCRAM bracelet.

30. The doctors at the E.R. called the Probation Department and described Plaintiff's condition. Probation Officer Dan Boivin gave the doctors permission to remove the bracelet.

31. On or about January 1, 2024, Plaintiff was released from the hospital. The hospital called DuPage County Sheriff's office to inform them of Plaintiff's discharge. An officer instructed Plaintiff to report to the jail lobby for replacement of the SCRAM bracelet.

32. Plaintiff told Defendant Bianchi that he went to the E.R. because of his injuries caused by SCRAM bracelet.

33. With regards to the SCRAM bracelet, Defendant Bianchi told Plaintiff, "I hope they find one to fit you," or words to that effect.

34. On or about January 2, 2024, Defendant Brockman placed a SCRAM bracelet on Plaintiff's right leg.

35. Defendant Rob McEllin was present for the attachment of the bracelet.

36. Plaintiff told Defendants Brockman and McEllin about his visit to the E.R. Neither Defendant showed concern about his injuries, simply saying that Plaintiff still needed to wear the SCRAM bracelet.

37. On information and belief, Defendants Brockman and McEllin had no plan in place to address the future onset of pain in Plaintiff's right leg.

**Post-Guilty Plea**

38. On or about January 30, after pleading guilty, Plaintiff was removed from the SCRAM program. On or about February 9, 2024, as a condition of bond, Plaintiff was placed back onto the SCRAM program.

39. Defendant Brock placed a SCRAM bracelet onto Plaintiff's right leg.

40. Defendant McEllin was present for the attachment of the bracelet to Plaintiff's leg.

41. Defendants Brock and McEllin both had knowledge of Plaintiff's experience at the E.R. for his left leg, including the extent of his pain and injuries.

42. Soon after the bracelet was put back onto his right leg, Plaintiff experienced irritation on his right leg from the SCRAM bracelet.

43. On or about February 13, 2024, Plaintiff sought emergency medical attention. Medical personnel diagnosed Plaintiff's injury to his right leg as abrasion.

44. On or about February 21, 2024, his right leg started showing further reddening and scarring, as depicted in color copies of the following photos:





45. On or about February 23, 2024, his injuries on his right leg started to bleed and discharge matter:



46. On or about February 26, 2024, Plaintiff sought emergency medical attention.

47. Plaintiff presented with a 5x2cm wound to his right lower leg, with redness and tenderness.

48. Medical personnel drew a blue circle around his wound, telling Plaintiff to seek emergency medical attention if the redness reaches the line.

49. Plaintiff requested a note from medical personnel at the ER to have the SCRAM bracelet moved to a different extremity

50. Plaintiff received the note and presented it to Defendant Brockman at the Probation Department. However, Defendant Brockman kept the SCRAM bracelet on the same leg.

51. On February 29, the redness on Plaintiff's ankle neared the blue circle, as depicted in color copies of the following photos:



52. On or about March 3, 2024, Plaintiff started to experience more swelling and discharge from the SCRAM bracelet, with the redness and scarring breaching the blue circle:



53. On or about March 5, 2024, Plaintiff's right ankle continued to swell and discharge. Additionally, the wound started to bleed, as depicted in color copies of the following photos:





54. On or about March 7, 2024, Plaintiff sought emergency medical attention with serious injuries to his right lower leg. His right lower leg showed a reaction to the SCRAM bracelet, showing irritation, swelling, crusting, and redness:




55. The doctor contacted Plaintiff's probation officer and alerted them of the need to remove the bracelet.

56. The doctor told the probation officer on the phone that Plaintiff would need ongoing treatment with the device off.

57. Plaintiff returned to the Probation Department, where Defendant Brockman reattached a SCRAM bracelet to his left leg. At this time, Plaintiff's left leg had barely healed from his ordeal at the E.R. on December 30, 2023. Plaintiff was still experiencing pain in his left leg.

58. On March 9, Plaintiff still had severe scarring and redness on his right leg:



59. On or about March 19, 2024, Plaintiff sought emergency medical attention again. Medical personnel noted that Plaintiff had developed a rash to his right ankle at the old site of the SCRAM bracelet. However, because the bracelet had since been moved to his left ankle, he also had symptoms on that ankle. There was severe redness on his left lower leg at the site of the SCRAM bracelet, and remaining cellulitis on his right lower leg.

60. During one of Plaintiff's visits to the E.R., a doctor called the Probation Department requesting to remove the SCRAM bracelet for medical necessity. The Probation Department, presumably Defendants McEllin, Brockman, or Bianchi, or somebody who reported to Defendant McEllin, denied that request, demanding that Plaintiff keep the bracelet on and instead come to the Probation Department to get the bracelet removed. Due to the nature of the medical emergency, the doctor took off the SCRAM bracelet anyway.

61. Plaintiff entered IDOC custody on March 25, 2024, with two active infections in both ankles. Plaintiff still had discharge and open wounds, and struggled to walk.

62. Today, Plaintiff still has doctor appointments and outstanding medical bills because of these injuries.

**DAMAGES**

63. As a direct result of Defendants' conduct and omissions, Plaintiff sustained injuries and damages, including pain and suffering, emotional distress, mental anguish, restrictions on his ability to work and make a living, and thousands of dollars in medical bills.

64. As a direct result of Defendants' conduct and omissions, Plaintiff could not walk properly.

65. As a direct result of Defendants' conduct and omissions, Plaintiff still has swelling, itchiness, dermatitis, cellulitis, and eczema from the SCRAM bracelet.

66. As a direct result of Defendants' conduct and omissions, Plaintiff needed to leave work early several times, suffering loss of income and loss of career opportunities.

67. As a direct result of Defendants' conduct and omissions, Plaintiff sustained physical injuries, including physical chronic pain and suffering, scarring, emotional distress, permanent nerve damage, and personal injuries.

## CAUSES OF ACTION

**COUNT I**
**Deliberate indifference to Plaintiff's serious medical need**
**(Fourteenth Amendment)**
*Brought under 42 U.S.C. § 1983 Against Defendants Brockman and McEllin*

68. Plaintiff incorporates by reference all the allegations set forth in this Complaint.

69. Plaintiff's medical injuries to his legs were so obvious that even a layperson would be able to perceive a need for a doctor's attention.

70. In the manner described more fully above, Defendants Brockman and McEllin purposefully, knowingly, or reckless allowed Plaintiff's pain and injuries on his lower left leg to fester to the point of needing acute medical attention.

71. Well before Plaintiff's visit to the E.R., Defendants Brockman and McEllin were aware that Plaintiff had a serious medical condition requiring their intervention.

72. Defendants Brockman and McEllin had the power and had a duty to remove, adjust, or relocate the bracelet for medical necessity.

73. Defendant Brockman personally affixed the SCRAM bracelet onto Plaintiff on several occasions.

74. Defendant McEllin directly supervised Brockman, at times overseeing the administration of the SCRAM bracelet onto Plaintiff and hearing Plaintiff complain directly.

75. Defendants Brockman and McEllin acted unreasonably and with deliberate indifference to Plaintiff's serious medical needs when they failed to adjust the SCRAM bracelet properly, remove the SCRAM bracelet, or develop a plan to help prevent pain and injury, after Plaintiff informed them of the severity of his pain.

76. The acts and omissions of the Defendants to this claim were contributing proximate causes of Plaintiff's injuries, including but not limited to pain, suffering, and emotional distress.

77. Plaintiff is entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1983, as well as pre-judgment interest, post-judgment interest, and costs as allowable by federal law.

**COUNT II**
**Failure to Intervene**
**(Fourteenth Amendment)**
*Brought under 42 U.S.C. § 1983 Against All Defendants*

78. Plaintiff incorporates by reference all the allegations set forth in this Complaint.

79. In the manner more fully described above, Defendants had reason to know that Plaintiff's constitutional rights were being violated.

80. Defendants had reasonable opportunity to prevent the violation of Plaintiff's constitutional rights as set forth above had they been so inclined but failed to do so.

81. Defendants' failures to act were intentional, done with reckless indifference to Plaintiff's rights.

82. As a direct and proximate result of these failures, Plaintiff's rights were violated and he suffered injuries.

**Count III**
**Deliberate indifference to Plaintiff's serious medical need**
**(Eighth Amendment)**
*Brought under 42 U.S.C. § 1983 Against Defendants Brockman and McEllin*

83. Plaintiff incorporates by reference all the allegations set forth in this Complaint.

84. After Plaintiff pled guilty on January 30, Defendants Brockman and McEllin were aware of Plaintiff's serious medical needs, and knew the risk of harm to Plaintiff if the SCRAM bracelet was put on and remained attached to his right or left leg.

85. Despite that knowledge, Defendant Brockman, with Defendant McEllin's approval, attached the SCRAM bracelet to his right leg and later attached the SCRAM bracelet to his left leg. Defendants Brockman and McEllin left Plaintiff in a state of chronic pain until Plaintiff again needed emergency medical attention.

86. As a result of Defendants' unconstitutional conduct, Plaintiff experienced injuries, including, but not limited to, pain, suffering, and emotional distress.

87. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice and/or with reckless indifference to Plaintiff's rights.

88. Alternatively, Defendants were deliberately indifferent to Plaintiff's objective serious medical needs, and their actions were undertaken intentionally, with malice and/or reckless indifference to Plaintiff's rights.

**COUNT IV**
**Failure to Intervene**
**(Eighth Amendment)**
*Brought under 42 U.S.C. § 1983 Against All Defendants*

89. Plaintiff incorporates by reference all the allegations set forth in this Complaint.

90. In the manner more fully described above, Defendants had reason to know that Plaintiff's constitutional rights were being violated.

91. Defendants had reasonable opportunity to prevent the violation of Plaintiff's constitutional rights as set forth above had they been so inclined but failed to do so.

92. Defendants' failures to act were intentional, done with malice and/or reckless indifference to Plaintiff's rights.

93. As a direct and proximate result of these failures, Plaintiff's rights were violated and he suffered injuries.

WHEREFORE, Plaintiff David James Witt respectfully requests that this Court enter judgment in his favor and against Defendants, awarding compensatory damages, attorneys' fees, and costs against each Defendant, and punitive damages against each of the Individual Defendants, as well as any other relief this Court deems appropriate.

**JURY DEMAND**

Plaintiff David James Witt hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully submitted,

**DAVID WITT**

By**:** /s/ Russell Ainsworth
*One of Plaintiff's Attorneys*

Russell Ainsworth
LOEVY & LOEVY
311 N. Aberdeen, 3rd FL
Chicago, IL 60607
(312) 243-5900
russell@loevy.com